Manly, J.j
dissenting. Not concurriug in the opinion of a majority of the Court, I will state briefly the reasons of my n op-concurrence.
The military bill of February, 1884, under which the service of the petitioner is claimed, prescribes the term of service “for the war ” too plainly and positively to adtnit of abridgment by implications in favor of any persons embraced within its provisions.
The part of the bill directly'bearing upon the question is the first section, and is m the following words : “That from and after the' passage of this, act all white men, residents of the Confederate States, between the ages of 17 and SO, shall be in the military service of the Confederate States, 'or the war.”
Hero, manifestly, all persons, between the ages of 17 and §0 are declared to belong to the military forces'of the country, for the war. That the Congress in this conscription of persons was regarding them as a class seems to be probable. A proper exegesis of the, statute, according to the view which I take of it, .requires this concession. But it Socs not follow that a continuous application, of the law to the class would enlarge- or let out any one embraced within its folds. The obligation to service under it is not during their continuance in the class, but during the war.
A prescribed ago is.an anomalous ami novel limitation to military service ; for a term of years, for the war, or for an expedition, is more usual and convenient. In our country, where there is no provision for keeping a register of births, and where, consequently, these records are .very irregularly kept, and in most cases soon lost or destroyed, there is no iact more liable, to controversy, and which may be. affected by a greater,variety of proof, iban the age of a person. How are questions of age to be determined ? *11 It will not do to make thorn depend upon the allegations .of soldiers or the will of the commanders; and it follows that some tribunal must be established and set daily to adjudicate cases as they arise. In the beginning, when enrolling liien for service, where tune and opportunity are afforded for investigation, questions of age are found sufficiently vexatious and troublesome. In the* midst of campaigns, "such, investigations would be utterly impracticable. •
■ My inference is, that-Congress could not have intended to prescribe such a limit to the service of the senior reserves/and I think it did not. *
T'h.e true and reasonable interpretation of the law, then, is, that it places in the military service of the Confederate States, all persons within the prescribed'ages foi the war. There is no other interpetration which will give the ordinary signification to the words used. And, as the intention of this, sis well as all other laws on the subject, is to raise an army for full and complete service in the. field, it is believed to be within the purview of the law, that from time to. time, as - the junior reserves,arrive at the ago of 18, they may bo eonscribed for general service. When ouco so conscripted and claused, there is.no provision of the law, and no rule of rhe military .-service, I take it, whereby they become entitled at any time to be subordinated or discharged, except for disability. .
The fifth section of the bill (iTth February) has been referred to as throwing some light on the question before us. I perceive hut little in it to aid us. It seems to he an instance, not unfrequeutly occurring in legislation, whole a proviso is made to emasculate completely the section or part of the law to which it is appended. This is all. . •
*12 In the law of the 10th April, 1862, .authorizing the President to call into service person,s between the ages of 18 and 35, it is • provided, that the President may call those thereafter arriving at 18, and when called, all should serve their full term. The two acts, that of April, 1802, and the one now before us, have accomplished, in my judgment, the same objects, by different words. The same necessities were upon the country, and it is proper to presume that similar provisions of law were intended to be made to meet them. The two laws'were probably constructed by different .minds, and hence the..difference of language. The intent seems to have been the same,.and the comprehensive and forcible words used in the act of February last, sufficiently declare such intent.
The words, for the war, or any similar words in any other connexion in the section, might be of ambiguous import. But .in the connection in which they 'stand, they prescribe á term of service, as already stated,- too plainly, to bo mistaken, and which I do not'feel, at liberty to abridge, from anything which I find of apparent'ineoiasis-tency in the law, or from any considerations of public .policy.
My opinion is, that the petitioner-is rightfully under the control of the military authorities, and is not entitled to he discharged.